IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHOUJING ZHOU and NATHEN W.
BARTON,

          Plaintiffs,

   v.

TING FU, YE YING ZHAO, HEA INC.,
HONG LI, JIE HUANG, WEI LIU,
XIAOMIN ZHANG, DAN YU, and JOHN
DOES 1-10,

          Defendants.

Case No. 3:24-cv-01944-AB

OPINION & ORDER

**BAGGIO, District Judge:**

Self-represented Plaintiffs Shoujing Zhou and Nathen W. Barton bring this action against self-represented Defendants Ting Fu, Ye Ying Zhao, HEA Inc., Hong Li, Jie Huang, Wei Liu, Xiaomin Zhang, and Dan Yu alleging: (1) fraud; (2) unlawful business practices under Or. Rev. Stat. §§ ("ORS") 646.608 and 646.609; (3) fraudulent misrepresentation; (4) unjust enrichment; (5) breach of contract; (6) violation of—and conspiracy to violate—the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b)–(d); and (7) sale of unregistered securities in violation of 15 U.S.C. §§ 77e and 77x and ORS 59.115 and 59.135. *See* Am. Compl. ¶¶ 863–1223, ECF No. 53. Defendants now move to dismiss and strike portions of Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and (f).[1] Defs.' Mot. Dismiss and Strike ("Defs.' Mot."), ECF No. 71. For the reasons below, the Court grants in part Defendants' Motion.

## BACKGROUND

Over two years, Plaintiffs made several money transfers that they believed to be investments in—or loans in connection with—a "[f]oreign currency trading business" operated by Defendant Fu and supported by her alleged accomplices, Defendants Zhao, HEA, Inc., Li, Huang, Liu, Zhang, and Yu. Am. Compl. ¶¶ 30, 138, 142, 921. Specifically, between July 29, 2022, and June 2, 2023, Plaintiffs made deposits "for the purpose of loaning . . . 'investment'

---

[1] At the time Defendants filed their Motion to Dismiss and Strike, they were represented. Shortly after filing Defendants' pending motion, counsel for Defendants withdrew as counsel of record with the Court's leave. *See* Mot. Withdraw, ECF No. 74; Order, ECF No. 77. All Defendants are currently unrepresented. Additionally, in its July 16, 2025 Order, the Court explained that Defendant HEA, Inc. could not join the pending Motion to Strike and Dismiss because Defendant HEA, Inc. is a corporation and cannot proceed without representation. Order, ECF No. 89. The Court entered default against Defendant HEA, Inc. on August 28, 2025. Order, ECF No. 93. For clarity, "Defendants' Motion" refers only to the non-defaulting, individual Defendants.

money to earn a return . . . ." *Id.* ¶¶ 1111–12. In 2024, Plaintiffs allege that they discovered that the foreign currency trading business "was a scam and Ponzi scheme from the very inception . . . ." *Id.* ¶ 97.

While there are eight named Defendants in this case, Plaintiffs' allegations focus on the alleged wrongdoings of Defendants Fu and Huang. *See id.* ¶ 108 ("[Defendant Fu] is the ringleader of the 'investment.'"); *see also id.* ¶ 59 ("[Plaintiffs] learned [Defendants Fu and Huang] owed [other victims] over a million dollars . . . ."). Plaintiffs allege that Defendants Zhao, Li, Zhang, Yu, and Liu were also involved in defrauding Plaintiffs, but allege lesser degrees of involvement in the foreign currency trading business and fewer interactions with Plaintiffs. *See, e.g.*, *id.* ¶ 886 ("[Plaintiff Zhou] less frequently socialized with [Defendants Li and Zhang] . . . ."). Collectively, Plaintiffs allege that "[t]he Fraudsters pulled [Plaintiff Zhou] into their social circle to gain [Plaintiff Zhou's] trust so they could extract money out of [Plaintiffs]." *Id.* ¶ 698.

## I.    Defendants Huang and Fu

Beginning in October 2022, and over the next two years, Plaintiff Zhou transferred her and Plaintiff Barton's money to Defendants Huang and Fu with the belief that Plaintiffs' money would be invested only in the foreign currency trading business. *Id.* ¶¶ 41, 104.

Plaintiffs allege that one of Plaintiff Zhou's friends, Defendant Huang, "introduced the idea of the [foreign currency trading business] investment to [Plaintiff Zhou]." *Id.* ¶ 18. In 2022, Defendant Huang told Plaintiff Zhou she was interested in making an investment "in a profitable foreign exchange business . . . but was short the money to do so, and wanted to borrow it from [Plaintiff Zhou]." *Id.* ¶ 21. In July 2022, Plaintiff Zhou agreed to lend Defendant Huang $30,000. *Id.* ¶ 22. In exchange, Defendant Huang promised to repay Plaintiff Zhou $33,000 one month

later. *Id.* ¶ 23. But Defendant Huang never paid Plaintiff Zhou any amount under this agreement. *Id.* ¶ 25.

Plaintiffs also allege that Defendant Huang helped Defendant Fu promote the foreign currency trading business by "befriend[ing] other women in the Portland Chinese community," and claiming that "she herself wanted to take advantage of the new opportunity and ask her 'friend' if she could borrow money . . . ." *Id.* ¶¶ 15–16. Plaintiffs allege that Defendant Huang similarly befriended Plaintiff Zhou for the purpose of gaining her confidence and obtaining her money while knowing the foreign currency trading business was fraudulent. *Id.* ¶¶ 579–582, 685, 878. As Plaintiffs grew more suspicious of the foreign currency trading business, Plaintiff Zhou requested that Defendant Huang provide "more details of the supposed '[f]oreign currency trading business.'" *Id.* ¶ 702. In response, Defendant Huang "blocked [Plaintiff Zhou] on WeChat" in early 2024. *Id.* ¶ 703.

In October 2022, Plaintiff Zhou met Defendant Fu, the alleged "ringleader of the [foreign currency trading business]." *Id.* ¶¶ 108, 618. That month, Defendant Fu explained to Plaintiff Zhou "how the 'investment' worked." *Id.* ¶ 619. In this explanation, Defendant Fu said that Plaintiff Zhou would receive a "10% payout . . . 9–10 times a year[,]" and "within one year the profit would equal or exceed the principle [sic]." *Id.* ¶¶ 633–34. After hearing Defendant Fu's explanation, Plaintiff Zhou entered into a written agreement with Defendant Fu on October 29, 2022. *Id.* ¶¶ 32, 636. The fundamental provisions of the agreement are alleged as follows: (1) Plaintiff Zhou would lend Defendant Fu $300,000; (2) Defendant Fu would invest that money in a "[f]oreign currency trading business" only; and (3) Defendant Fu would repay $30,000 "every 40 business days." *Id.* ¶¶ 32, 41; *see also* Am. Compl. Ex. 1 (contract dated October 29, 2022, between Plaintiff Zhou and Defendant Fu), ECF No. 53-1. In 2023, Defendant Fu told Plaintiffs

that "new money borrowed would be treated the same as the money under contract, the same 10% return every 40 business days." *Id.* ¶ 47. With this understanding, Plaintiffs loaned Defendant Fu "another $326,400 in USD and ¥2,890,000 RMB under these terms." *Id.* ¶ 48. In total, Plaintiffs allege that Defendant Fu directed Plaintiff Zhou twenty six times[2] "to deposit money to specific accounts controlled by agents of the 'investment' for the purpose of loaning the 'investment' money to earn a return on the loaned money[,]" and Plaintiff Zhou did so each time. *Id.* ¶¶ 1111–12. Defendant Fu also told Plaintiff Zhou that "if [Plaintiff Zhou] needed any money to just tell [Defendant Fu], and [Defendant Fu] would tell the Boss [Song Zhang][3] to let [Plaintiff Zhou] withdraw the profit immediately." *Id.* ¶ 632.

In September 2023, Plaintiffs requested "$9,000 due under the contract" from Defendant Fu. *Id.* ¶ 50. Defendant Fu responded with excuses as to why payments could not be made. *Id.* ¶¶ 50, 55. Defendant Fu made these excuses despite her prior representations that Plaintiffs would receive nine or ten "payouts" annually. *Id.* ¶ 633.

Until March 27, 2024, "none of the Defendants told [Plaintiffs] that the 'investment' lost any money at all." *Id.* ¶ 658. On that date, Defendant Fu "admitted to [Plaintiff Zhou] to losing some money . . . ." *Id.* ¶ 173. Later, in October 2024, Plaintiffs heard that the foreign currency

---

[2] Plaintiffs' Amended Complaint lists twenty-six dates in which Defendant Fu "direct[ed] [Plaintiff Zhou] to deposit money . . . ." Am. Compl. ¶ 1111. Some of these dates are listed multiple times. For example, Plaintiffs list October 28, 2022 four times. The Court interprets Plaintiffs' allegation to mean that Defendant Fu directed Plaintiff Zhou to make four deposits on October 28, 2022. *See id.* ¶ 1112 ("On each of those dates [Plaintiff Zhou] deposited money into the account specified by [Defendant Fu]"). Another date listed in paragraph 1111 is July 29, 2022. But Plaintiffs allege elsewhere that they did not meet Defendant Fu until October 2022. *See id.* ¶ 604 ("[July 2022] is the first [Plaintiff Zhou] ever heard the name [Defendant Fu]."); *see also id.* ¶ 618 ("In October of 2022, [Defendant Huang] arranged [Defendant Fu] to meet [Plaintiff Zhou] . . . .").

[3] The Court dismissed Defendant Song Zhang from this action on April 2, 2025. Order, ECF No. 76.

trading business had "los[t] a large amount of money . . . ." *Id.* ¶ 950. Around this time, Plaintiffs "realized [Defendant Fu] did not intend to repay the loan or could not repay the loan" and "came to suspect the '[f]oreign currency trading business' might be a scam and that something was seriously amiss with the 'investment.'" *Id.* ¶¶ 56–57; *see also id.* ¶ 951 ("What [Plaintiffs] didn't know until 2024 was that the 'investment' was a fraud and a Ponzi scheme."). Plaintiffs also realized, also in October 2024, that "[Defendant Fu's] documentation supposedly proving she had truly lost money in an actual investment appeared to be nonsense." *Id.* ¶ 682. But earlier that year in March 2024, Plaintiffs also allege that they learned that Defendant Fu and her husband, Defendant Zhao, used Plaintiff Zhou's identity to obtain a $99,000 car loan taken out in Plaintiff Zhou's name. *Id.* ¶¶ 77–80.

To date, Plaintiffs allege that Defendant Fu owes Plaintiffs over $626,400 and at least ¥2,690,000 RMB, which does not include promised returns on investment, fees, and penalties. *Id.* ¶¶ 160–63. Plaintiffs also allege that Defendant Huang owes Plaintiffs $33,000. *Id.* ¶¶ 23, 25.

## II.    Other Defendants

In addition to Defendants Fu and Huang, Plaintiffs bring this case against several other Defendants who allegedly assisted Defendants Fu and Huang in operating the foreign currency trading business. The first of these Defendants is Defendant Zhang, whom Plaintiffs allege "collected money for [Defendant] Fu inside [t]he People's Republic of China and helped [Defendant Fu] move the money to the United States." *Id.* ¶ 83. Plaintiffs also allege that "in at least three social occasions from 2022 to 2024, [Defendant Zhang] made . . . representations to [Plaintiff Zhou]" that "[Plaintiffs] could invest in [Defendant Fu's foreign currency trading business] via loaning it money, that the principal loan amount was guaranteed to be returned to [Plaintiffs], and that the '[f]oreign currency trading business' would pay dividends to [Plaintiffs]

on the loans." *Id.* ¶¶ 879, 887. On one occasion, in loaning Defendant Fu money, Plaintiffs

transferred money to Defendant Zhang "on [Defendant Fu's] behalf." *Id.* ¶ 85.

Plaintiffs also bring claims against four family members of Defendants Fu, Huang, and

Zhang, including their respective husbands—Defendants Zhao, Liu, and Yu. *Id.* ¶¶ 110, 125,

131. Plaintiffs also bring claims against Defendant Fu's mother, Defendant Li. *Id.* ¶ 115.

Plaintiffs allege that Defendants Zhao and Li would "convince potential victims that [Defendant]

Fu was trustworthy and running a successful '[f]oreign currency trading business[,]'" including

Plaintiffs. *Id.* ¶¶ 114, 116, 879, 886. Plaintiffs do not allege that Defendants Liu or Yu made the

same or similar representations. Instead, Plaintiffs only allege that Defendants Liu and Yu knew

about their wives' allegedly fraudulent activity. *Id.* ¶¶ 924–31.

Plaintiffs also bring claims against Defendant HEA, Inc., "an Oregon corporation owned

and controlled by [Defendants Fu and Zhao]." *Id.* ¶ 113. When Plaintiffs did not transfer money

directly to other Defendants, Plaintiffs allege that Defendants Huang and Fu would direct

Plaintiffs to send money to Defendant HEA, Inc. *Id.* ¶¶ 24, 639.

Finally, Plaintiffs bring claims against ten "John Doe" Defendants and allege that one

John Doe Defendant is the foreign currency trading business. *Id.* ¶ 136. Plaintiffs make no

allegations as to the identities of the other nine John Doe Defendants.

## STANDARDS

### I.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct. . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts must liberally construe pleadings of self-represented parties. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a self-represented plaintiff's complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a self-represented plaintiff's complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## II.    Rule 12(f)

Courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious

issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *reversed on other grounds*, 510 U.S. 517 (1994)). But courts must be sure not to "resolve disputed and substantial factual or legal issues in deciding a motion to strike." *Id.* (citation modified). Unlike a Rule 12(b)(6) motion to dismiss, a Rule 12(f) motion does not test the sufficiency of the complaint. *Id.* at 974. Courts view Rule 12(f) motions with disfavor and infrequently grant them. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008). Rule 12(f) motions are disfavored because "[t]here is a judicial preference for deciding matters on their merits when possible." *City of Portland v. Iheanacho*, No. 3:17-cv-0401-AC, 2018 WL 1426564, at *2 (D. Or. Mar. 22, 2018) (citing *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865 (9th Cir. 1959)). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

## DISCUSSION

Defendants first move to dismiss "some or all of [Plaintiffs' Amended Complaint] with prejudice, depending on which Defendant the Court is ruling on." Defs.' Mot. 1. Defendants also move to strike several paragraphs of Plaintiffs' Amended Complaint as evidentiary in nature, scandalous, immaterial, and redundant. *Id.* at 8–10. The Court addresses each motion in turn.

## I.    Motion to Dismiss

Defendants first move to dismiss all claims against Defendants Yu and Liu, arguing that they are not liable for acts of their respective spouses, Defendants Zhang and Huang, solely because they are married to other Defendants. Defs.' Mot. 4–5. Second, Defendants move to dismiss Plaintiffs' second claim for violations of Oregon's Unlawful Trade Practices Act

("UTPA"), ORS 646.608 and 646.609, because it is time-barred under the applicable statute of limitations, ORS 646.638(6). *Id.* at 5. Third, Defendants move to dismiss Plaintiffs' fourth claim for unjust enrichment as to Defendants Zhao, Li, Huang, Zhang, Yu, and Liu because "it is inapposite to bring a quasi-contract claim for unjust enrichment in an effort to compensate the alleged victims of a tortious civil conspiracy." *Id.* at 6. Finally, Defendants move to dismiss Plaintiffs' fifth claim for breach of contract against Defendants Zhao, Li, Zhang, Yu, and Liu because Plaintiffs cannot "bring a contractual claim in an effort to compensate the alleged victims of a tortious civil conspiracy." *Id.* at 7. The Court dismisses all claims against Defendants Yu and Liu and dismisses Plaintiffs' fifth claim for breach of contract against Defendants Zhao, Li, and Zhang. The Court denies the remainder of Defendants' Motion to Dismiss under Rule 12(b)(6).[4]

    A.    Defendants Yu and Liu

    Defendants move to dismiss all claims against Defendants Yu and Liu. *Id.* at 4–5. Defendants first argue that Plaintiffs cannot recover from Defendants Yu and Liu solely for being married to Defendants Zhang and Huang, respectively. *Id.* Defendants next argue that Plaintiffs do not meet the "substantially heightened pleading requirements" required "to impute tort liability . . . to a third party who is not alleged to have actually committed the elements of the underlying tort." *Id.* at 2. The Court agrees that Plaintiffs may not bring their state claims against Defendants Yu and Liu solely because they are married to other Defendants. Additionally, Plaintiffs do not sufficiently plead any of their claims against Defendants Yu and Liu because they fail to comply with the heightened pleading requirements under Rule 9(b).

---

[4] Except as to Defendants Yu and Liu, Defendants do not move to dismiss Plaintiffs' first, third, sixth, seventh, eighth, ninth, tenth, eleventh, or twelfth claims.

i.    ORS 108.020 and 108.030

Defendants first move to dismiss all claims against Defendants Yu and Liu because neither is liable "solely because [they are] married to [Defendants Zhang and Huang]." *Id.* at 4–5. Under Oregon law, "[f]or all civil injuries committed by a spouse in a marriage, damages may be recovered from that spouse only, and the other spouse is not responsible for such civil injuries, except where the spouses would be jointly responsible with each other if the marriage did not exist." ORS 108.030. Additionally, with some exceptions not applicable here, "a spouse in a marriage is not liable for the separate debts of the other spouse." ORS 108.020.

Here, Plaintiffs' state claims are barred by ORS 108.030 and 108.020 because Plaintiffs' only argument is that Defendants Yu and Liu are liable based on their marriages to Defendants Zhang and Huang.[5] The plain language of ORS 108.030 and 108.020 does not support Plaintiffs' argument as to Defendants Yu or Liu.

Turning first to Defendant Yu, Plaintiffs only allege that "[Defendant Yu] saw a lot of money come into his marriage via [Defendant Zhang's] bank accounts[,]" but Plaintiffs do not explain how Defendant Yu harmed Plaintiffs. Am. Compl. ¶ 927. For example, Plaintiffs never allege that Defendant Yu asked Plaintiffs to invest in the foreign currency trading business. Indeed, Plaintiffs admit in their Amended Complaint that Defendant Yu "may have only passively participated in the 'investment' . . . ." *Id.* ¶ 1017. Because Plaintiffs plead no role that Defendant Yu had in the foreign currency trading business, Plaintiffs do not show how Defendant Yu would be jointly responsible with his spouse if the marriage did not exist.

---

[5] The parties do not address whether ORS 108.030 and 108.020 would apply to Plaintiffs' federal claims. Because the Court dismisses all claims against Defendants Yu and Liu due to Plaintiffs' noncompliance with Rule 9(b), the Court declines to address whether ORS 108.030 and 108.020 apply to Plaintiffs' federal claims against Defendants Yu and Liu.

Plaintiffs have similarly failed to allege that Defendant Liu should be held liable under their state claims. Plaintiffs only allege that Defendant Liu is associated with the foreign currency trading business because he is married to Defendant Huang. *See, e.g.*, Am. Compl. ¶ 968 ("[Defendant Liu is] equally liable for the torts committed by [his wife]."). As is the case with Defendant Yu, Plaintiffs never allege that Defendant Liu ever communicated with Plaintiffs about investing in the foreign currency trading business. And, like Defendant Yu, Plaintiffs allege that Defendant Liu "may have only passively participated . . . by keeping quiet . . . ." *Id.* ¶ 1017. In light of these limited allegations regarding Defendant Liu's role in the foreign currency trading business, Plaintiffs do not show how Defendant Liu would be jointly responsible with his spouse if the marriage did not exist.

Plaintiffs argue that "ORS 108.030 was not intended to shield a spouse from liability when they were aware of and benefitting from ongoing fraudulent conduct." Pls.' Resp. Defs.' Mot. ("Pls.' Resp.") 4, ECF No. 73. But Plaintiffs cite no authority that supports their interpretation.[6] Indeed, the plain language of the statutes does not support Plaintiffs' argument. Specifically, ORS 108.030 applies to "*all* civil injuries" except in cases in which "the spouses would be jointly responsible with each other if the marriage did not exist." (emphasis added). Similarly, ORS 108.020 states that "a spouse in a marriage is not liable for the *separate debts* of the other spouse." (emphasis added). Early interpretations of these statutes by Oregon courts appear to adopt the statutes' plain meanings. *See Smith v. Smith*, 205 Or. 286, 293–94, 287 P.2d

---

[6] On the Court's own review, Oregon courts have long recognized the understanding that a marital relationship does not automatically create other special relationships such that liability from one spouse can impute to another. *See Blevins v. Phillips*, 218 Or. 121, 126–27, 343 P.2d 1110 (1959) ("We do not mean to imply that there may not in fact be a master-servant or principal-agent relationship existing between husband and wife, but rather that no such situations are here before us.").

572 (1955) ("Numerous early laws of Oregon were directed at the removal of specific common

law disabilities of both husband and wife . . . . Neither [spouse] was liable for the debts of the

other except in specified instances [citing ORS 108.020]. . . . The wife was made liable for her

own torts [citing ORS 108.030].") (*abrogated on other grounds*, *Heino v. Harper*, 306 Or. 347,

759 P.2d 253 (1988)); *Kowaleski v. Kowaleski*, 227 Or. 45, 57–58, 361 P.2d 64 (1961) ("at

common law husband and wife were one person . . . [the wife] lost the capacity to contract for

herself, or to sue or be sued without joining the husband as a plaintiff or defendant. . . . Oregon

statutes [citing ORS 108.020 and 108.030] . . . changed this common law."). Accordingly, ORS

108.020 and 108.030 bar Plaintiffs' state claims against Defendants Yu and Liu.

      ii.    Rule 9(b)

Additionally, Plaintiffs' federal and state claims against Defendants Yu and Liu fail

because their Amended Complaint does not comply with Rule 9(b). In alleging fraud, Rule 9(b)

requires that "a party must state with particularity the circumstances constituting fraud." In cases

in which a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that

course of conduct as the basis of a claim . . . the pleading of that claim as a whole must satisfy

the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

1103–04 (9th Cir. 2003). In cases in which multiple defendants allegedly defraud plaintiffs, the

complaint must "set forth each individual's alleged participation in the fraudulent scheme."

*United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). In other words, "Rule

9(b) does not allow a complaint to merely lump multiple defendants together but 'requires

plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

each defendant separately of the allegations surrounding his alleged participation in the fraud.'"

*Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).

Here, each of Plaintiffs' twelve claims involve a unified course of fraudulent conduct stemming from Defendants' alleged participation in the foreign currency trading business. Therefore, Plaintiffs' pleading as a whole must satisfy the particularity requirement of Rule 9(b). Plaintiffs do not comply with Rule 9(b) as to their claims against Defendants Yu or Liu. First, Plaintiffs recite at seven separate instances a mere conclusory allegation that Defendants Yu and Liu are "equally liable for the torts committed by their respective wives." Am. Compl. ¶¶ 968, 987, 1007, 1116, 1125, 1134, 1144. Plaintiffs do not support these conclusory allegations with other facts explaining how Defendants Yu or Liu are liable under any of Plaintiffs' twelve claims. Second, Plaintiffs elsewhere allege that Defendants Yu and Liu "had a role to play as well." *Id.* ¶ 921. But Plaintiffs never explain what their "roles" were. Third, Plaintiffs further allege that Defendants, including Defendants Yu and Liu, "were all working together[.]" *Id.* ¶ 943. This allegation is improperly vague because it "merely lump[s] multiple defendants together" without informing Defendants Yu and Liu of the allegations surrounding their alleged participation in the foreign currency trading business. *Swartz*, 476 F.3d at 764–65. Because Plaintiffs never explain what Defendants Yu and Liu did to harm Plaintiffs under any of their twelve claims, Defendants Yu and Liu must be dismissed for Plaintiffs' failure to comply with Rule 9(b).

In sum, Plaintiffs' state claims against Defendants Yu and Liu are dismissed because Plaintiffs cannot merely attach liability by association of marriage. Plaintiffs also do not plead their federal and state claims with particularity and thus fail to comply with the heightened pleading requirement of Rule 9(b). The Court therefore dismisses all claims against Defendants

Yu and Liu. The Court allows Plaintiffs to file a Second Amended Complaint containing claims against Defendants Yu and Liu as long as such claims comply with Rule 9(b).

> B.     Second Claim for Relief: Unlawful Trade Practices Act

Remaining Defendants Fu, Huang, Zhao, Li, and Zhang move to dismiss Plaintiffs' UTPA claim because "Plaintiffs filed this action more than one year after the discovery of the purportedly unlawful practice." Defs.' Mot. 5. Plaintiffs argue that their claim is not time-barred because "[i]t wasn't until early 2024 that [Plaintiff Zhou] realized [Defendant Fu] could not or would not repay the loan." Pls.' Resp. 6. The Court agrees with Plaintiffs that their UTPA claim is not time-barred.

Oregon law allows a person to "bring an individual action in an appropriate court to recover actual damages" under ORS 646.638(1), but a litigant must bring their action "within one year after the discovery of the unlawful method, act or practice." ORS 646.638(6). Oregon's discovery rule provides that "[t]he statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 333, 297 P.3d 1287 (2013) (quoting *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278, 265 P.3d 777 (2011)); *see also Morris v. Dental Care Today, P.C.*, 306 Or. App. 259, 261, 473 P.3d 1137 (2020) ("The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct."). In UTPA claims involving allegations of fraud, "the period of limitation begins to run when the plaintiff knew or should have known of the alleged fraud." *Bodin v. B. & L. Furniture Co.*, 42 Or. App. 731, 734, 601 P.2d 848 (1979). In other words, "because the limitation period is tied to the plaintiff's 'discovery' of the unlawful conduct, it runs in this case

from when the plaintiffs . . . either actually knew or should have known that the representation . . . was not true." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 137, 361 P.3d 3 (2015).

Whether a plaintiff should have known that a defendant's representations were false or misleading in violation of Oregon law "depends on a two-step analysis." *Mathies v. Hoeck*, 284 Or. 539, 543, 588 P.2d 1 (1978). First, a plaintiff must have had sufficient knowledge to "excite attention and put a party upon his guard or call for an inquiry. . . ." *Id.* If a plaintiff's knowledge would not "excite [the] attention" of a reasonable person, then the inquiry ends because a reasonable person would not have investigated further to discover the injury. *Id.* (quoting *Linebaugh v. Portland Mortg. Co.*, 116 Or. 1, 14, 239 P. 196 (1925)). But if the plaintiff's knowledge created a duty to investigate, then, at the second step, "it must also appear that 'a reasonably diligent inquiry would disclose' the fraud." *Id.* (quoting *Wood v. Baker*, 217 Or. 279, 287, 341 P.2d 134 (1959)); *see also Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–8 (D. Or. Apr. 24, 2025) (applying *Mathies* discovery rule framework).

Plaintiffs filed suit on November 20, 2024. Defendants rely on paragraph 50 of Plaintiffs' Amended Complaint to argue that Plaintiffs discovered Defendants' alleged fraud in September 2023 when Defendant Fu explained that she could not pay Plaintiff Zhou $9,000, which was allegedly due under their written agreement. Defs.' Mot. 5. That paragraph reads: "In September 2023, [Plaintiff Zhou] asked [Defendant Fu] for about $9,000 due under the contract and [Defendant Fu] started making false excuses over WeChat why she could not pay that." Am. Compl. ¶ 50. If September 2023 were the moment of discovery, Plaintiffs' UTPA claim would be time-barred because Plaintiffs filed suit over one year after that date. But construing this

allegation in the light most favorable to Plaintiffs, the Court is not convinced that Defendant Fu's inability to pay Plaintiff Zhou upon request would excite Plaintiffs' attention, put Plaintiffs on guard, or call for further inquiry that Defendant Fu's representations were false. Indeed, Plaintiffs allege that Defendant Fu "did pay [Plaintiffs] the equivalent of about $64,000 . . . ." *Id.* ¶ 43. When Defendant Fu communicated her inability to pay, it did not create a duty to investigate, particularly in light of Defendant Fu's prior payments.

Plaintiffs, by contrast, cite paragraphs 56 and 57 of their Amended Complaint to argue that they first became aware of Defendants' allegedly fraudulent acts in 2024. Pls.' Resp. 6. There, Plaintiffs allege that, in early 2024, Plaintiffs "realized [Defendant] Fu did not intend to repay the loan or could not repay the loan" and that they "came to suspect the '[f]oreign currency trading business' might be a scam. . . ." Am. Compl. ¶¶ 56–57. Additionally, in February 2024, Plaintiffs began talking to other people whom Defendants also owed money in connection with the foreign currency trading business. *Id.* ¶¶ 59, 667. Through these conversations, Plaintiffs discovered that Defendants Fu and Huang owed at least five people over $1 million collectively. *Id.* ¶ 59. Additionally, Plaintiffs "learned that [Defendant Fu] had told different investors different stories that could not all be true." *Id.* ¶ 671. Finally, in March 2024, Plaintiffs discovered that Defendants Fu and Zhao used Plaintiff Zhou's identity to obtain a car loan in Plaintiff Zhou's name. *Id.* ¶¶ 79–80. By April 2024, Plaintiffs "became convinced enough that [the foreign currency trading business] was a fraud . . . ." *Id.* ¶ 711. Through these investigations, discoveries, and growing suspicions, Plaintiffs sufficiently plead that they discovered Defendants' alleged fraud at some point in early 2024. Because Plaintiffs filed this case in November 2024, Plaintiffs' UTPA claim is timely.

///

C.    Fourth Claim for Relief: Unjust Enrichment

Defendants Huang, Zhao, Li, and Zhang next move to dismiss Plaintiffs' unjust enrichment claim against them because "it is inapposite to bring a quasi-contract claim for unjust enrichment in an effort to compensate the alleged victims of a tortious civil conspiracy." Defs.' Mot. 6. Plaintiffs respond that they do not allege a civil conspiracy in their fourth claim. Pls.' Resp. 5. In viewing Plaintiffs' Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs appear to sufficiently plead a claim for unjust enrichment.

In evaluating the merits of an unjust enrichment claim under Oregon law, courts must "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132, 404 P.3d 912 (2017). In other words, Oregon courts evaluate unjust enrichment claims "by matching the circumstances presented in the case to those patterns already recognized in the case law, without explaining an overarching doctrine." *Id.* at 127. This analysis therefore requires courts to engage in "a case-by-case approach because this area of the law remains 'a work in progress.'" *McAllister Constr. Co. v. Liu*, 343 Or. App. 53, 59, 578 P.3d 190 (2025) (quoting *Larisa's Home Care,* 362 Or. at 125). That said, "[a] conclusion that one party has obtained benefits from another by fraud is . . . one of the most recognizable sources of unjust enrichment." *Larisa's Home Care*, 362 Or. at 133 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13 cmt. a). Transfers that are "induced by fraud [are] subject to rescission and restitution." *Id.* (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13(1)). As is relevant here, "[a] transfer induced by fraud or material misrepresentation is subject to restitution, whether the representation is

made by the transferee or by a third party." *Id.* at 139 n.8 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13 cmt. g).

Here, Plaintiffs sufficiently allege a claim for unjust enrichment. Plaintiffs allege that Defendants Huang, Zhao, Li, and Zhang "received a financial benefit as a result of multiple Defendants receiving money from [Plaintiffs]." Am. Compl. ¶ 1009. Plaintiffs then allege Defendants Huang, Zhao, Li, and Zhang each had a separate role in making misrepresentations to Plaintiff Zhou regarding Defendant Fu's foreign currency trading business. First, Plaintiffs allege that Defendant Huang told Plaintiff Zhou about "a rare opportunity to invest . . . money in a profitable foreign exchange business . . . was short the money to do so, and wanted to borrow it from [Plaintiff Zhou]." *Id.* ¶ 21. Plaintiff Zhou then "formed a verbal agreement . . . loaning [Defendant Huang] $30,000." *Id.* ¶ 22. Second, Plaintiffs allege that Defendant Zhao also "frequently communicated to [Plaintiff Zhou]" regarding Defendant Fu's foreign currency trading business and that Plaintiffs "could invest in it via loaning it money." *Id.* ¶ 879. Finally, Plaintiffs allege that Defendants Li and Zhang similarly "made these representations to [Plaintiff Zhou]" several times at "social occasions," specifically that Plaintiffs could invest in Defendant Fu's foreign currency trading business. *Id.* ¶¶ 886–87. As to Defendants Huang, Zhao, Li, and Zhang, Plaintiffs sufficiently allege that each Defendant "was aware the benefit they received was as [sic] the expense of [Plaintiffs]" and that the benefit received was "a result of money collected as part of their participation in a Ponzi scheme or fraud." *Id.* ¶¶ 1014–15. Even though Defendants Huang, Zhao, Li, and Zhang were not parties to any agreement between Defendant Fu and Plaintiff Zhou, Plaintiffs' allegations that each Defendant benefitted from their individual material misrepresentations are sufficient to establish an unjust enrichment claim against them.

Defendants' argument that Plaintiffs cannot "bring a quasi-contract claim for unjust enrichment in an effort to compensate the alleged victims of a tortious civil conspiracy" is unavailing for two reasons. Defs.' Mot. 6. First, as mentioned above, Plaintiffs bring their claim for unjust enrichment as a result of each individual Defendants' alleged fraudulent misrepresentations concerning Defendant Fu's foreign currency trading business. *See* Am. Compl. ¶ 1015 (describing Defendants as participating in "a Ponzi scheme or fraud"); *see also Larisa's Home Care*, 362 Or. at 133 ("A conclusion that one party has obtained benefits from another by fraud is . . . one of the most recognizable sources of unjust enrichment."). Second, Defendants inaccurately characterize Plaintiffs' unjust enrichment claim. Plaintiffs never allege in their unjust enrichment claim that Defendants engaged in a civil conspiracy to unjustly enrich themselves.[7] *See* Pls.' Resp. 5 ("We didn't apply a Conspiracy theory of recovery to our Unjust Enrichment claims.").

In all, Plaintiffs sufficiently allege a claim for unjust enrichment against Defendants Huang, Zhao, Li, and Zhang because each, either as a transferee or third party, allegedly benefitted by making various misrepresentations to Plaintiffs regarding the foreign currency trading business.

///

///

---

[7] In support of their argument, Defendants cite two cases: *Barnes v. Routh Crabtree Olsen P.C.*, 963 F.3d 993 (9th Cir. 2020) and *Granewich v. Harding*, 329 Or. 47, 985 P.2d 788 (1999). Defs.' Mot. 6. These cases do not involve claims for unjust enrichment, nor do they involve claims for fraud. Because courts must "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust[,]" *Barnes* and *Granewich* are inapposite for purposes of deciding Defendants' Motion. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132, 404 P.3d 912 (2017).

D.    Fifth Claim for Relief: Breach of Contract

Defendants Zhao, Li, and Zhang move to dismiss Plaintiffs' breach of contract claim against them because they cannot "bring a contractual claim in an effort to compensate the alleged victims of a tortious civil conspiracy." Defs.' Mot. 7. Plaintiffs nevertheless allege that all remaining Defendants are jointly and severally liable for damages arising under the alleged breach by Defendants Fu and Huang. Am. Compl. ¶ 1051.

To state a claim for breach of contract under Oregon law, a plaintiff must, at a minimum, plead (1) "the existence of a contract," (2) "its relevant terms," (3), "a breach by defendant[,]" and (4) "damages to plaintiff" resulting from the defendant's breach. *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 276, 564 P.3d 142 (2025). Generally, "parties to a contract cannot bring suit against a third-party for breach of the contract." *Adelsperger v. Elkside Dev. LLC*, 371 Or. 61, 72, 529 P.3d 230 (2023).[8]

There are two alleged contractual relationships alleged in this case, one between Plaintiff Zhou and Defendant Fu, and another between Plaintiff Zhou and Defendant Huang. As to the contract between Plaintiff Zhou and Defendant Fu, Plaintiffs allege the contract provided that (1) Plaintiff Zhou would lend Defendant Fu $300,000, (2) Defendant Fu would invest that money only in a "[f]oreign currency trading business," and (3) Defendant Fu would repay $30,000 "every 40 business days." Am. Compl. ¶¶ 32, 41. Similarly, for the contract between Plaintiff Zhou and Defendant Huang, Plaintiffs plead that (1) Plaintiff Zhou would loan Defendant Huang $30,000, and (2) Defendant Huang would repay Plaintiff Zhou $33,000 in one month. *Id.* ¶¶ 22–23. Plaintiffs allege that both Defendants Fu and Huang breached their respective contracts.

---

[8] Exceptions apply to this general rule, such as the breach of implied warranty. *Adelsperger*, 371 Or. at 72. Plaintiffs have not argued that such exceptions apply.

Plaintiffs first allege that Defendant Fu never repaid her loan back to Plaintiff Zhou. *Id.* ¶¶ 1034–35. Plaintiffs also allege that Defendant Huang "never paid back anything" to Plaintiff Zhou. *Id.* ¶ 25.

Plaintiffs, however, fail to plead a breach of contract claim against Defendants Zhao, Li, and Zhang. Specifically, Plaintiffs never allege that Defendants Zhao, Li, or Zhang are or intended to be a party to either of the two alleged contracts Plaintiff Zhou entered into with Defendants Fu and Huang. Plaintiffs instead argue that Defendants Zhao, Li, and Zhang nevertheless should be treated as parties to existing contracts because they "act[ed] in concert to deceive or induce [Plaintiffs] into a contract[,]" and cite *Bonds v. Landers*, 279 Or. 169, 566 P.2d 513 (1977) to support their assertion. Pls.' Resp. 4–5. But in *Bonds*, while the plaintiff sought "to collect the balance alleged to be due on a promissory note[,]" one of the defendants brought a separate counterclaim alleging that the plaintiff and another defendant "conspired to defraud [the defendant]." *Bonds*, 279 Or. at 171. In other words, one party brought a claim based in contract, and another party brought a *separate* civil conspiracy claim based in tort. It was not the case, as Plaintiffs suggest, that the court allowed a party to bring a civil conspiracy claim based in contract. *See* Pls.' Resp. 4.

Plaintiffs next cite *Granewich v. Harding*, 329 Or. 47, 58, 985 P.2d 788 (1999), to support their assertion that "[t]he fact that not all the Fraudsters signed the contracts does not absolve them of liability." Pls.' Resp. 5. But the page of *Granewich* to which Plaintiffs cite does not support Plaintiffs' assertion. To be clear, that page supports the assertion that, to establish that multiple defendants conspired to commit a tort on a plaintiff, "a plaintiff need not establish that each person acting in concert himself committed a tort." *Granewich*, 329 Or. at 58. Nowhere

in *Granewich* does the court hold that a plaintiff can bring suit against a third party for breach of contract because of that third party's alleged tortious actions. *See* Pls.' Resp. 5.

Plaintiffs have not alleged a contract between Plaintiffs and Defendants Zhao, Li, and Zhang, nor have they offered any relevant authority supporting their assertion that Defendants Zhao, Li, and Zhang should nevertheless be treated as parties to Plaintiffs' contracts with Defendants Fu or Huang. Therefore, Plaintiffs' breach of contract claim is dismissed as to Defendants Zhao, Li, and Zhang.

## II.     Motion to Strike

Defendants move to strike two categories of paragraphs of Plaintiffs' Amended Complaint under Rule 12(f). Defendants first move to strike several paragraphs that "contain allegations of prior acts of [Defendant Fu] related to a criminal matter that was before the District Court of Oregon in 2018" because these allegations are "immaterial and scandalous." Defs.' Mot. 9. Defendants next move to strike all "'WeChat' messages" and "translated and transcribed voicemails" that Plaintiffs include in their Amended Complaint because they are evidentiary in nature, immaterial, and redundant. *Id.* at 9–10. The Court grants Defendants' Motion as to the paragraphs cited below.

### A.     Criminal Allegations

Defendants move to strike under Rule (12)(f) all allegations in Plaintiffs' Amended Complaint that refer to Defendant Fu's criminal history as immaterial and scandalous. *Id.* at 8–9. Plaintiffs argue that the criminal allegations are relevant and are included to "show [Defendant Fu's] history of running racketeering influenced corrupt organizations." Pls.' Resp. 1–2. The Court agrees that Plaintiffs' allegations of Defendant Fu's criminal history are immaterial and scandalous.

An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy,* 984 F.2d at 1527 (quoting C. Wright, A. Miller, et al., 5C Fed. Prac. & Proc. Civ. § 1382 (1st ed. 1990)). Here, reference to Defendant Fu's criminal history is not material to any of the claims because none of the claims Plaintiffs allege require a showing of past criminal conduct or that a defendant has a propensity to commit crimes.

Scandalous matter is "that which improperly casts a derogatory light on someone, most typically on a party to the action." *Moreno v. USG Corp.*, No. 06-CV-2196BPCL, 2007 WL 951301, at *1 (S.D. Cal. Mar. 19, 2007) (internal quotations omitted). Other courts have stricken allegations that "have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002). Here, Plaintiffs' allegations of Defendant Fu's criminal history have all three features. First, Defendant Fu's alleged history has no bearing on this case because Plaintiffs fail to explain how Defendant Fu's prior actions of operating a "portion of an international ring of prostitution websites and brothel locations" are connected to Defendant Fu's operation of a foreign currency trading business. Am. Compl. ¶ 5. The only connection between these two operations appears to be that Defendant Fu is allegedly involved in both. *Id.* ¶¶ 6, 13. Second, Defendant Fu's history is prejudicial because Plaintiffs' allegations appear to be offered to invite legal extrapolations that Defendant Fu must also be liable in this case. *See* Pls.' Resp. 2 ("[Defendant Fu's] last occupation isn't included to cast her in a negative light, but to show her history of running racketeering influenced corrupt organizations."). Third, Plaintiffs' allegations have criminal overtones because they involve the prior criminal prosecution of Defendant Fu. Accordingly, Plaintiffs' references to Defendant Fu's criminal history would only distract from

the actual issues in this case. The Court therefore strikes paragraphs 5 through 12, 139, 865, and 1059 through 1064 from Plaintiffs' Amended Complaint.

      B.     WeChat Messages and Voice Message Transcripts

Defendants next move to strike screenshots of WeChat messages and voice message transcripts that Plaintiffs include in their Amended Complaint because the content is "more suited to discovery between the parties at a later stage of the proceeding."[9] Defs.' Mot. 9–10. Defendants also argue that these screenshots should be stricken as immaterial and redundant. *Id.*

As a general matter, there is no "blanket rule" that images or screenshots may not be included in pleadings. *Brizuela v. City of Sparks*, No. 3:19-CV-00692-MMD-WGC, 2021 WL 4150936, at *11 (D. Nev. Sept. 13, 2021). Federal Rule of Civil Procedure 10(c) allows for written instruments to become part of a pleading. However, courts in the Ninth Circuit have stricken attachments containing evidentiary material, arguing that they should not be attached to pleadings. *See Perez v. Cnty. of Los Angeles*, No. CV 22-7696 SVW (AS), 2024 WL 3280697, at *2–3 (C.D. Cal. June 3, 2024), *report and recommendation adopted*, No. CV 22-7696-SVW (AS), 2024 WL 3278930 (C.D. Cal. July 1, 2024) (striking "still photos . . . [and] a purported transcript of a video recording" because they "do not constitute written instruments within the meaning of Fed. R. Civ. P. 10(c)"); *Mora v. City of Chula Vista*, No. 20CV779-GPC(AGS), 2021 WL 1165054, at *8 (S.D. Cal. Mar. 26, 2021) (striking "black and white photos of Plaintiff and his injuries . . . [and] a letter from [the plaintiff's] physician concerning his seizures" as "evidentiary materials that do not fall under Rule 10(c)").

---

[9] The specific paragraphs Defendants seek to strike from Plaintiffs' Amended Complaint are paragraphs 38–39, 166–72, 174–76, 178–81, 183–87, 189–92, 194, 196, 198, 201, 203, 205–06, 208, 210, 212–36, 238, 240–41, 244–50, 252, 254–78, 475, 478, 481, 485, 505–68, 686–97, 746–47, 749–78, 787–97, 799–827, and 1041–46. Defs.' Mot. 9–10.

Here, Plaintiffs attach a lengthy collection of 170 screenshots of text messages and voice message transcripts. Many of these screenshots contain information already alleged elsewhere in Plaintiffs' Amended Complaint. *See, e.g.*, Am. Compl. ¶ 39 (text message screenshot with accompanying translation in which Defendant Fu discusses the return on Plaintiff Zhou's investment); *see also id.* ¶ 37 ("[Defendant Fu] promised [Plaintiff Zhou] in writing that [Plaintiff Zhou] would receive a 10% return . . . ."). Other screenshots involve messages between Defendants and alleged non-party victims. *See, e.g., id.* ¶¶ 563–64 ("transcript [of a] phone call between [Defendant Huang] and [non-party]."). In sum, many of these screenshots are redundant or immaterial.

In addition, none of these screenshots are "written instruments" for purposes of Rule 10(c) because they do not "memorialize legal rights or duties or give formal expression to a legal act or agreement." *Foust v. City of Page*, 2014 WL 3340916, *2 (D. Ariz. 2014). The Court therefore finds the attached screenshots to be evidentiary in nature and strikes them from Plaintiffs' Amended Complaint. In reaching this conclusion, the Court makes no determination as to the admissibility of the text messages as evidence in any further proceedings before the Court.

## III.   Rule 8

Finally, the Court warns Plaintiffs that the length of their Amended Complaint fails to comply with Rule 8. Courts have routinely dismissed pleadings for their length, including pleadings that were shorter than Plaintiffs' 278-page Amended Complaint. *See, e.g., Bong v. Brown*, No. 6:23-CV-00417-MTK, 2025 WL 1279378, at *2 (D. Or. May 2, 2025) ("Plaintiff's [Second Amended Complaint] is 236 pages and contains 1,394 paragraphs . . . it exceeds the length and scope of Plaintiff's [First Amended Complaint] despite the Court's instruction that the

[First Amended Complaint] violated Rule 8(a)."); *Bechler v. Macaluso*, No. CV 08-3059-CL, 2008 WL 4145881, at \*2–3 (D. Or. Sept. 8, 2008) ("The court, in the interest of judicial economy, declines the task of working through the 110–page complaint . . . ."). In the interest of judicial economy, the Court finds it appropriate to impose a page limit on Plaintiffs. *See Kelley v. Rambus, Inc.*, 384 F. App'x 570, 572 (9th Cir. 2010) ("The district court properly exercised its discretion by ordering that [the plaintiff] limit the original 227–page Consolidated Complaint to 50 pages . . . ."). Accordingly, the Court orders Plaintiffs to file a Second Amended Complaint to cure the deficiencies identified in this Opinion & Order and to comply with Rule 8. To ensure compliance with Rule 8, Plaintiffs' Second Amended Complaint shall not exceed fifty pages.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss and Strike [71]. The Court grants Plaintiffs leave to file a Second Amended Complaint, not to exceed 50 pages, within 30 days of this Opinion & Order, curing the deficiencies identified herein.

IT IS SO ORDERED.

DATED this _18th_ day of December, 2025.

_____
AMY M. BAGGIO
United States District Judge